709 A.2d 328

HANOVER INSURANCE COMPANY, PLAINTIFF, v. BOROUGH OF ATLANTIC HIGHLANDS AND MONMOUTH COUNTY JOINT INSURANCE FUND (JIF), DEFENDANTS.

Superior Court of New Jersey
Law Division
Special Civil Part
Monmouth County

Argued April 9, 1997—Decided April 25, 1997.

*Perlow & Pescatorem,* attorneys for the plaintiff, (*Richard M. Pescatore,* Esq. appearing).

*Cleary, Alfieri & Grasso, P.C.,* attorneys for the defendants (*John F. Marshall,* Esq. appearing).

GILROY, J.S.C.

The sole issue to be decided by the Court is whether an insurance carrier's claim for reimbursement of personal injury protection (PIP) benefits paid to its insured under *N.J.S.A.* 39:6A–9.1, from a public entity, is barred by *N.J.S.A.* 59:9–2e. The Court answers the question in the affirmative.

The matter was presented to the Court by the parties filing cross-motions for summary judgment. Both counsel concurred that the issue presented is a matter of law and submitted the same to the Court upon an agreed state of facts as set forth in the moving and opposing papers.

Plaintiff Hanover is an insurance carrier licensed to do business in New Jersey. On January 31, 1996, Hanover's insured, Sandra Mahoney, was the operator of a vehicle which collided with a snow plow truck owned and operated by the defendant Borough of

Atlantic Highlands (Borough). The Borough is self-insured for liability purposes as a member of the Monmouth County Joint Insurance Fund (JIF). Mahoney sustained personal injuries and made an application for PIP benefits on March 7, 1996. Hanover paid Mahoney PIP benefits under the insured's policy. Hanover served a Notice of Tort Claim upon the defendant Borough and JIF advising that Hanover was seeking reimbursement of PIP benefits paid to its insured under *N.J.S.A.* 39:6A–9.1. Hanover demanded that the parties submit to arbitration, but the defendants refused. Hanover instituted the within action seeking an Order of Court compelling defendants to submit to arbitration under *N.J.S.A.* 39:6A–9.1.[1]

■ Defendants deny liability asserting that Hanover's claim is barred pursuant to *N.J.S.A.* 59:9–2e which reads as follows:

If a claimant receives or is entitled to receive benefits for the injuries allegedly incurred from a policy or policies of insurance or any other source other than a joint tortfeasor, such benefits shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award against a public entity or public employee recovered by such claimant; provided, however, that nothing in this provision shall be construed to limit the rights of a beneficiary under a life insurance policy. No insurer or other person shall be entitled to bring an action under a subrogation provision in an insurance contract against a public entity or public employee.

The statute "was designed to prevent plaintiffs from obtaining a double recovery by requiring that any insurance proceeds or other collateral compensation paid to the plaintiff for the alleged injuries sustained as a result of a governmental entity's negligence be subtracted from any judgment against the governmental agency." *Pinkowski v. Township of Montclair*, 299 *N.J.Super.* 557, 568, 691 *A.*2d 837 (App.Div. 1997). Hanover, while acknowledging the aforementioned principle, asserts that statute is not applicable to the present matter in that the statute only bars subrogated claims.

---

[1] The Monmouth County Joint Insurance Fund was named as a party defendant as the entity providing liability insurance to the defendant Borough of Atlantic Highlands. The two defendants shall collectively be referred to as Borough, the public entity tortfeasor throughout the balance of this opinion.

"Subrogation" has been defined as "The substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies or securities." *BLACK'S LAW DICTIONARY. FIFTH EDITION*, 1979. It is " . . . an equitable device intended to effectuate an obligation's ultimate discharge by the one who ought to pay it and thus to promote 'essential justice' between the parties. (Cite omitted)." *Hayes v. Pittsgrove Tp. Bd. of Educ.*, 269 *N.J.Super.* 449, 454–455, 635 *A.*2d 998 (App.Div. 1994). When an insurer brings an action as a subrogor, the insurer only has those rights against the tortfeasor which its insured possessed. Subrogation does not create any additional rights in the insurer. *Aetna Ins. Co. v. Gilchrist Brothers, Inc.*, 85 *N.J.* 550, 560–562, 428 *A.*2d 1254 (1981).

Here, Hanover is not seeking to recoup PIP benefits paid to its insured as a subrogor but rather in Hanover's own right. *N.J.S.A.* 39:6A–9.1 provides in part as follows:

> *An insurer* . . . paying . . . personal injury protection benefits . . . as a result of an accident occurring within this State *shall*, within two years of the filing of a claim, *have the right to recover the amount of payments from any tortfeasor* who was not, at the time of the accident, required to maintain personal injury protection or medical expense benefits coverage, other than for pedestrians, under the laws of this State, including personal injury protection coverage required to be provided in accordance with Section 18 of P.L.1985,c.520(C.17:28–1.4), or although required did not maintain personal injury protection or medical expense benefits coverage at the time of the accident. In the case of an accident occurring in this State involving an insured tortfeasor, the determination as to whether in insurer . . . is legally entitled to recover the amount of payments and the amount of recovery, including the costs of processing benefit claims and enforcing rights granted under this section, shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration. (Emphasis added)

*N.J.S.A.* 39:6A–9.1 creates " . . . a new direct right of action against certain tortfeasors for reimbursement of PIP benefits, but it does not establish any subrogation rights for the PIP insurer, through the insured." *Allstate Ins. Co. v. Coven*, 264 *N.J.Super.*, 240, 240–246, 624 *A.*2d 594 (App.Div. 1993). The statute creates a right in an insurer which is " . . . primary and is

not linked to any purported subrogation rights of the beneficiary of the PIP benefits." *Sherman v. Garcia Const., Inc.,* 251 *N.J.Super.* 352, 356, 598 *A.*2d 242 (App.Div. 1991).

A literal reading of the last sentence of N.J.S.A. 59:9–2e only bars prosecution of subrogated claims and, as such, by itself would not prohibit Hanover's action being that the same is brought as a direct claim under N.J.S.A. 39:6A–9.1. The statute, however, is not to be read in the abstract but rather as part of more encompassing legislative design to establish immunities for public entities. *Sims v. City of Newark, et al.,* 244 *N.J.Super.* 32, 40, 581 *A.*2d 524 (App.Div. 1990). One may recover in tort against a public entity but only within the provisions of the Tort Claims Act and the policies guiding its interpretation. *Polyard v. Terry,* 160 *N.J.Super.* 497, 506, 390 *A.*2d 653 (App.Div. 1978); *aff'd,* 79 *N.J.* 547, 401 *A.*2d 532 (1979). Hanover's claim is barred by the announced legislative policy of prohibiting an insurance carrier from shifting losses incurred by reason of paying its insured benefits under an insurance policy, when the tortfeasor to which the insurance carrier seeks to shift the loss, is a public entity protected by the New Jersey Tort Claims Act. *The Travelers Ins. Co. v. Collella,* 169 *N.J.Super.* 412, 404 *A.*2d 1250 (App.Div. 1979); *Kramer v. Sony Corp. of America,* 201 *N.J.Super.* 314, 493 *A.*2d 36 (App.Div. 1985).

In *Travelers,* a workman's compensation insurance carrier sought reimbursement for benefits paid to an injured employee after the employee settled a damage claim with a third party public entity tortfeasor. The Court, in attempting to reconcile the right of a workman's compensation carrier to recoup benefits paid to an injured employee pursuant to *N.J.S.A.* 34:15–40 where the tortfeasor was a public entity entitled to tort immunity under *N.J.S.A.* 59:9–2e held, that the insurance carrier could not bring such an action against a public entity. The underpinning of the Court's decision is set forth on p. 415, 404 *A.*2d 1250 where the Court looked to the Legislature's intent in enacting the Tort Claims Act:

Beyond this, it is clear from the very language of the same section that the lawmakers did not intend their legislative relaxation of the bar of sovereign immunity to benefit insurers who receive premiums for underwriting the risk they insure. As is noted in the Comment–1972 appended to the statute, abstracted from the Report of the Attorney General's Task Force on Sovereign Immunity (May 1972), this reflects a recognition that the profit-making insurance companies are in a better position to withstand losses which they contract than are the already economically burdened public entities'.

In *Kramer* a workman's compensation insurance carrier sought credit against the carrier's obligation to pay benefits after a deceased employee's beneficiary recovered on a third party wrongful death and survival action against a public entity tortfeasor. The Court denied the carrier the credit sought. In reconciling *N.J.S.A.* 34:15–40 and *N.J.S.A.* 59:9–2e, the Court held at pp. 317–318, 493 *A.*2d 36:

Each of these sections seeks to shift the burden of loss compensable under the liability plan established in their respective acts to other parties.

*N.J.S.A.* 34:15–40 provides that a third party shall not be relieved of liability to an injured employee or his dependents because the employee or his dependents have a right to compensation under the workers' compensation act. However, subject to provisions for division of the expenses of the third-party action, the employer or its insurance carrier is to obtain the benefit of the third-party recovery to the extent that it has paid or is liable for compensation payments. (Cite omitted). Thus a loss which would in the absence of a liability claim be allocated to an employer is shifted to a third party.

*N.J.S.A.* 59:9–2e provides as follows:

[STATUTE OMITTED HEREIN. SEE STATUTE CITED ABOVE.]

Accordingly, *N.J.S.A.* 59:9–2e seeks to shift the burden of compensating injured claimant with a claim under the tort claims acts to third parties.

The issue before the Court in both *Travelers* and *Kramer* was that of reconciling a statutory right of subrogation of a workman's compensation insurance carrier, *N.J.S.A.* 34:15–40, with the Tort Claims Act and, as such, is distinguishable from the direct claim of Hanover under *N.J.S.A.* 39:6A–9.1. The distinction, however, is not dispositive.

The Court in *Travelers*, while acknowledging that the claim would have also been barred under the last sentence of *N.J.S.A.* 59:9–2e being that it was a subrogated claim, did not ground its decision upon that finding. The Court weighed the loss shifting provisions in the two statutes and held the tort claim provision to

be paramount. *Kramer, supra*, at 318, 493 *A*.2d 36. *See also, Pinkowski, supra*, at 568, 691 *A*.2d 837 where the Court, like *Travelers*, cited the legislative comment to the tort claim statute and held that "The policy underlying *N.J.S.A.* 59:9–2e 'reflects a recognition that profit-making insurance companies are in a better position to withstand losses which they contract for than are the already economically burdened public entities.'" This continued judicial acknowledgment of the legislative policy is the same whether the claim is brought by an insurer as a subrogor or in its own right. A Court should be concerned with " . . . the substance of the claim, not with the form in which it is presented. . . ." *Hayes, supra*, at 456, 635 *A*.2d 998.

*N.J.S.A.* 39:6A–9.1 was enacted subsequent to *Travelers*. The statute itself does not exempt public entity tortfeasors from those which an insurance carrier may assert a claim for reimbursement. One could argue that since the Legislature was aware of the Court's interpretation of *N.J.S.A.* 59:9–2e in *Travelers*, that the Legislature meant to contravene the Court's decision by the broad language in *N.J.S.A.* 39:6A–9.1. This Court does not interpret the statute as a legislative override of the Court's statutory construction in *Travelers*.

A statute may either address an issue by inclusion (affirmative language including the matter within the scope of the subject being controlled by the legislation) or by omission (failing to include a matter with-n the scope of the subject being controlled by the legislation). This principle is generally referred to as the "*expressio unius*" doctrine. The doctrine, however, " . . . like all rules of statutory construction, is merely an aid to determine legislative intent and does not constitute a rule of law." *Shapiro v. Essex Cty. Freeholders Bd.*, 177 *N.J.Super.* 87, 94, 424 *A*.2d 1203 (Law Div. 1980) Courts acknowledge that the Legislature is presumed thoroughly conversant with its own enactments. *Brewer v. Porch*, 53 *N.J.* 167, 174, 249 *A*.2d 388 (1969). It is assumed that the Legislature enacts laws with foresight as to the impact that a law will have upon other laws previously enacted by

the same branch of government. A Court may also presume that the Legislature is familiar with existing judicial construction of legislative enactments. *Chase Manhattan Bank v. Josephson*, 135 *N.J.* 209, 227, 638 *A.*2d 1301 (1994); *Brewer, supra*, at 174, 249 *A.*2d 388. If the Legislature intended to contravene a prior Court's decision by allowing insurers to recoup benefits paid to its insured from a public entity tortfeasor, it probably would have legislatively expressed the same in affirmative language. *Furey v. County of Ocean*, 273 *N.J.Super.* 300, 641 *A.*2d 1091 (App.Div. 1994).

The Court in *Furey* was confronted with the issue of harmonizing *N.J.S.A.* 59:9–2e with another statute, i.e., the statutory exemption of workman's compensation benefits under *N.J.S.A.* 2A:15–97. *N.J.S.A.* 2A:15–97 was enacted subsequent to The Tort Claims Act and subsequent to other judicial decisions interpreting the *N.J.S.A.* 59:9–2e including the *Travelers* and *Kramer*. It was argued in *Furey* that the Legislature was presumed to have been aware of The Tort Claims Act when it enacted *N.J.S.A.* 2A:15–97 and yet opted not to carve out an exception for Title 59. The *Furey* Court rejected the argument "... because it would once again shift to public entities a substantial burden of being subjected to the lien of the Workers Compensation insurance carrier for benefits paid under Title 34, without any indication that the Legislature intended such a result." *Id.* at 317, 493 *A.*2d 36. In so holding, the Court stated at 319, 641 *A.*2d 1091:

> There is not a single reference to the Tort Claims Act in the legislative history of *N.J.S.A.* 2A:15–97. We would expect that such a significant change in existing law would be noted and debated. The purpose of *N.J.S.A.* 2A:15–97 was to prevent double recovery by the injured party in tort actions. This problem had already been addressed and resolved with respect to those persons making claims against public entities. *N.J.S.A.* 59:9–2. There is no evidence that the enactment was intended to benefit Workers' Compensation insurance carriers. Legislative contemplation of such an unlikely disadvantage to public entities should not be inferred absent clear statutory language. We, therefore, decline to so interpret *N.J.S.A.* 2A:15–97.

This Court finds that if the Legislature intended to allow insurance carriers to shift losses to public entities by the enactment of *N.J.S.A.* 39:6A–9.1, contrary to both the Legislature's

prior announced policy underlying *N.J.S.A.* 59:9–2e, and prior judicial construction of the Tort Claims Act, that the Legislature would have either specifically provided for the exemption *in* *N.J.S.A.* 39:6A–9.1, or amended *N.J.S.A.* 59:9–2e. It did not do either. Consequently, the legislative policy of limiting public entity liability by preventing the shifting of losses by insurance carriers to public entity tortfeasors remains dominant and controls the issue before this Court.

Borough's cross motion for summary judgment is granted. Hanover's motion for summary judgment is denied.