**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3346-20

DURAPORT REALTY TWO, LLC,
DURAPORT REALTY FOUR LLC,
and DURAPORT HOLDING
COMPANY, LLC,

      Plaintiffs-Respondents,

v.

IMT STEEL, LLC, GIACOMO
ABRUSCI and PRESTIGE
CAPITAL CORPORATION,

      Defendants-Respondents,

and

INTERNATIONAL METALS
TRADING, LLC, BRET HEDGES
and IAN PARKER,

      Defendants-Appellants,

and

FGH STEEL, LLC and METAL
PARTNERS REBAR, LLC,

      Defendants.

_____

Argued May 05, 2022 – Decided July 21, 2022

Before Judges Mawla and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3964-17.

Daniel C. Stark argued the cause for appellants International Metals Trading, LLC, Bret Hedges and Ian Parker (Newman, Simpson & Cohen, LLP, attorneys; Daniel J. Cohen and Daniel C. Stark, on the briefs).

Jonathan T. Guldin argued the cause for respondents (Clark Guldin, attorneys; Jonathan T. Guldin, of counsel and on the brief; Janesa Urbano, on the brief).

PER CURIAM

In this landlord-tenant dispute arising from an industrial lease and guaranty, defendants International Metals Trading, LLC (IMT), Bret Hedges, and Ian Parker appeal from a June 7, 2021 judgment awarding damages in favor of plaintiffs Duraport Realty Two, LLC, Duraport Realty Four LLC, and Duraport Holding Company, LLC (collectively "Duraport"). We affirm in part and reverse and remand for a recalculation of damages.

Duraport owns and operates various properties for the storage, shipment, and warehousing of goods. Two of Duraport's properties are located close to each other in Bayonne and are generally used for stevedoring and offloading materials. One of the properties is located at 85 East 2nd Street ("Duraport II")

2

A-3346-20

and the other is located at block 476.01, lot 10.01 ("Duraport IV"). Defendant IMT is a company that produced rebar and a guarantor of its subsidiary IMT Steel's obligations under 2015 and 2016 leases with Duraport. Defendant Parker is a member of the IMT executive team and a guarantor of IMT Steel's obligations under the subject lease agreements. Defendant Hedges is another signatory to the same guaranties.

On November 17, 2015, Duraport Realty Two and IMT Steel entered into a Ware Yard Temporary Workspace License Agreement[1] ("the 2015 license agreement") for use of Duraport II "for the purposes of storing[,] bending, shearing, and fabricating rebar structures[.]" The license term commenced on December 1, 2015, and was to end on December 31, 2016. Per the agreement, IMT Steel was required to pay Duraport Realty Two monthly rent, or a "license fee" of $25,500. Upon expiration of the one-year term, IMT Steel had sixty days to remove all its equipment, machinery, and other property from the premises. During the sixty days, IMT Steel would be required to pay an increased rent of

---

[1] The lease agreement and subsequent agreements refer to IMT Steel as "IMT." At the time of the execution of the 2015 and 2016 leases and guaranties, IMT Steel, was a wholly owned subsidiary of IMT. In December 2017, defaulting defendant Giacomo Abrusci (and others) took over IMT Steel by means that are not clear from the record. That takeover is apparently the subject of an ongoing shareholder dispute in New York.

A-3346-20

$38,250 per month, which is equal to 150% of base rent. For any remaining holdover period, the rent would remain at $38,250 per month.[2]

Also on November 17, 2015, defendants Parker, Hedges, IMT, and Abrusci signed a guaranty ("the 2015 guaranty"), under which each guaranteed to Duraport Realty Two: "the full performance, payment, and observance of all the covenants, conditions, and agreements provided to be performed and observed under the [2015 license agreement] by IMT [Steel] for the period from and after the date hereof until the expiration of the term of the [2015 license agreement]."

On May 9, 2016, while the 2015 license agreement was in effect, Duraport Realty Four leased Duraport IV to IMT Steel under a separate lease agreement ("the 2016 lease agreement"). The 2016 lease agreement was to commence on September 15, 2016, and contained the following section referencing the 2015 license agreement:

> 2.3 <u>Prior Lease</u>. [IMT Steel] currently leases space (the "Prior Premises") from Duraport Realty Two . . ., an affiliate of [Duraport Realty Four], in Bayonne . . .,

---

[2] Additionally, "[a]ll costs associated with the use of [Duraport II] including electric usage, office cleaning, common area maintenance, repairs, replacements, security, HVAC maintenance, water and sewer usage, and all other costs associated with IMT [Steel's] use of the Workspace" were to be borne by IMT Steel.

A-3346-20

pursuant to the Prior Lease dated November 17, 2015[,] which was entered into between [IMT Steel] and Duraport [Realty Two]. The Prior Lease remains in full force and effect. Notwithstanding the foregoing, provided that [IMT Steel] is not in monetary default of the Prior Lease and/or this Lease, then from and after the Commencement Date of the Lease [IMT Steel] may notify [Duraport Realty Four] that [IMT Steel] shall remove itself from the Prior Premises, leave the Prior Premises in the condition required by the Prior Lease and specify a date (after the Commencement Date) that such removal shall be completed and upon which date, subject to compliance with the foregoing, that the prior Lease shall be cancelled and terminated ("the Prior Lease Termination Date").

At the request of either party hereto[,] the parties shall execute a document which shall memorialize the Prior Lease Termination Date and the release of the parties hereto of and from any obligation in the Prior Lease related to matters occurring after the Prior Lease Expiration Date.

Defendants Parker, Hedges, and IMT signed a guaranty ("the 2016 guaranty") on the same day the 2016 lease was executed. The 2016 guaranty provided for "the full payment, performance and observance of all of the terms, covenants, conditions, provisions and agreements therein provided to be paid, performed or observed by [IMT Steel] under the [2016 lease agreement.]"

As the motion judge found, the 2015 license was always intended to be temporary in anticipation of IMT Steel's moving its operation from Duraport II to Duraport IV to keep up with the demands and growth of its business. IMT

Steel did not, however, ultimately occupy Duraport IV. In or about July 2017, defaulting defendant Abrusci advised Duraport that IMT Steel would not take possession of Duraport IV. Consequently, on August 24, 2017, plaintiffs declared defendants to be in default.

In August 2017, IMT Steel began moving its equipment from Duraport II without notice to plaintiffs. Plaintiffs acknowledged that the last of IMT Steel's equipment and material was removed on or around January 19, 2018. From February 2018 until the beginning of August 2018, no rent was collected for Duraport II.[3]

Following IMT Steel's vacation of Duraport II, plaintiffs made efforts to find a replacement tenant for Duraport IV. Plaintiffs were ultimately able to negotiate and execute a lease with Ferrara West LLC, which commenced paying rent on August 5, 2018.

---

[3] The 2015 license agreement required IMT Steel to cover certain costs in addition to rent, which it failed to do. As a result, to mitigate damages and find a new tenant, Duraport needed to clean up the space and perform electrical work. Duraport paid for this work in the amount of $4,918.04. During its tenancy, one of IMT Steel's employees backed into and damaged one of Duraport's vehicles. Duraport paid $7,463.39 to have the damage repaired. Finally, IMT Steel was required to pay for snow removal and failed to do so. Duraport covered this cost as well and spent $9,934.75.

A-3346-20

On September 26, 2017, plaintiffs filed a complaint against defendants IMT Steel; IMT, Abrusci; Hedges; Parker; FGH Steel, LLC; Prestige Capital Corporation; and Metal Partners Rebar, LLC alleging: 1) breach of contract against IMT Steel; 2) negligence against IMT Steel; 3) breach of guaranty against IMT, Hedges, Parker, and Abrusci; 4) breach of contract against IMT Steel (for the 2016 lease agreement); 5) breach of guaranty against IMT, Hedges, and Parker (for the 2016 lease agreement); 6) breach of contract against IMT Steel (for equipment rental agreements); 7) promissory estoppel against IMT Steel; 8) unjust enrichment/quantum meruit against IMT Steel; 9) piercing the corporate veil against IMT and IMT Steel; 10) declaratory judgment against IMT, IMT Steel, Prestige, and Metal Partners; 11) fraud against IMT, IMT Steel, Hedges, Parker, and Abrusci; and 12) successor liability against FGH Steel.

On March 2, 2018, defendants Hedges, Parker, and IMT filed an answer with affirmative defenses and cross claims. Defendants IMT Steel and Abrusci failed to respond to the complaint or otherwise appear in the action. As a result, on September 17, 2019, plaintiffs obtained final judgment by default in the amount of $331,630.76 against IMT Steel and Abrusci, jointly and severally. Other defendants were dismissed by stipulation or agreement not to prosecute.

A-3346-20

As a result, the only remaining defendants pending trial were Hedges, Parker, and IMT.

On June 19, 2020, plaintiffs moved for summary judgment against defendants based on breach of the guaranty. On July 10, 2020, the motion judge entered an order granting the application in part, finding defendants under the guaranty. The judge reserved for trial the amount of lost rent, taxes, late fees, interest, and counsel fees (as provided for under the lease) to resolve the issues of the date calculation begins/ends, sufficiency of the mitigation of damages, if any, and the validity of calculations of all elements of the damages claim.

On February 9, 2021, the judge conducted a bench trial to resolve the damages issue. The sole witness was Duraport's principal, Vincenzo Alessi. Defendants did not call any witnesses. Based on the evidence, the judge determined that IMT Steel had breached its duties under the 2015 license agreement and the 2015 guaranty was enforceable. She found the 2016 lease agreement was voidable for a mutual failure of performance and awarded no damages under that agreement.[4] The judge also found that Duraport acted diligently to mitigate its damages by locating a new tenant and awarded holdover

---

[4] The determination not to award damages under the second lease has not been appealed.

A-3346-20

rent until the new tenant took occupancy in August 2018.  On June 7, 2021, the judge entered a final order of judgment against defendants, jointly and severally, in the amount of $799,445.18, plus pre-judgment interest in the amount of $82,551.84, for a total judgment of $881,997.02, plus post-judgment interest.

On appeal, defendants-appellants present the following arguments for our consideration:

> POINT I
>
> THE TRIAL COURT ERRED IN RULING THAT THE 2015 GUARANTY IS ENFORCEABLE AGAINST DEFENDANTS-APPELLANTS FOR HOLDOVER RENT ACCRUED AFTER EXPIRATION OF THE TERM AND THE 2015 LEASE AGREEMENT.
>
> POINT II
>
> THE TRIAL COURT ERRED IN DETERMINING THE PERIOD OF TIME AND AMOUNT FOR WHICH THE GUARANTORS ARE RESPONSIBLE.
>
>> A.   The Trial Court Wrongly Awarded Plaintiff[s] Holdover Rent for Several Months After IMT [Steel] Vacated the Duraport Two Property.
>>
>> B.   The Trial Court Improperly Found Defendants-Appellants' Liability as Guarantors was Greater than That of the Party Whose Obligations They Guaranteed.

A-3346-20

POINT III

THE TRIAL COURT MADE COMPUTATIONAL ERRORS IN DETERMINING THE AMOUNT OF THE JUDGMENT.

The scope of our review of a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). The findings on which a trial court bases its decision will "not be disturbed unless 'they are so wholly insupportable as to result in a denial of justice[.]'" Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 483-84 (1974) (quoting Greenfield v. Dusseault, 60 N.J. Super. 436, 444 (App. Div. 1960)). However, although a trial court's factual findings will not be overturned absent an abuse of discretion, questions of law are subject to de novo review. Balsamides v. Protameen Chems., Inc., 160 N.J. 352, 373 (1999).

A "lease is a contract . . . which sets forth [the parties'] rights and obligations to each other in connection with [a] temporary grant of possession of [one party's] property to [the other party]." Town of Kearny v. Disc. City of Old Bridge, Inc., 205 N.J. 386, 411 (2011). "[The Court's] function in interpreting a contract is to give meaning to the symbols of expression chosen by the parties." Ibid. "Courts enforce contracts 'based on the intent of the parties, the express terms of the contract, surrounding circumstances and the

10

underlying purpose of the contract.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (quoting Caruso v. Ravenswood Devs., Inc., 337 N.J. Super. 499, 506 (App. Div. 2001)). "We do not supply terms to contracts that are plain and unambiguous, nor do we make a better contract for either of the parties than the one which the parties themselves have created." Maglies v. Est. of Guy, 193 N.J. 108, 143 (2007). In addition, the conduct of the parties after a writing is signed, but before any alleged breach, coupled with their manner of dealing with one another, may be probative of their intent in making the agreement. Joseph Hilton & Associates, Inc. v. Evans, 201 N.J. Super. 156, 171 (App. Div. 1985).

Guaranty agreements are similar to surety agreements in that the guarantor signs a separate agreement attendant to the underlying contract (in this case, the agreement) to be responsible for the financial obligations of the tenant. Feigenbaum v. Guaracini, 402 N.J. Super. 7, 18 (App. Div. 2008). It is also well settled that a guaranty agreement can only be applied to the strict terms of the underlying agreement and is not subject to extension beyond those strict terms. Peoples Nat'l Bank v. Fowler, 73 N.J. 88, 101 (1977).

With these guiding principles in mind, we reject defendants' contention that the guaranty expired after the initial one-year term of the temporary license ended. The 2015 license agreement addressed the eventuality of a holdover

tenancy, providing for an increased rent that applied to any holdover period without limitation. As the judge found, the 2015 guaranty signed by Parker, Hedges, and IMT was a "continuing guaranty" that "unconditionally guarantee[d] to Duraport the full performance, payment, and observance of all the covenants . . . under the [2015 license agreement.]" The guaranty remained in full force and effect with respect to any "renewal, modification, or extension" of the 2015 license agreement. The guaranty goes on to state that the obligations of the guarantors are "continuing" and will not be terminated, affected, or impaired in the event Duraport asserts any of its rights to enforce any clause of the agreement.

Included among the covenants and conditions of the underlying 2015 agreement is IMT Steel's obligation to deliver possession or pay holdover rent if possession continues beyond the termination date. The fact that plaintiffs are asserting their right to enforce that holdover rent clause does not limit or alter the guarantors' obligation to pay holdover rent.

We also reject defendants' assertion that IMT Steel was not liable for holdover rent after it delivered possession in January 2018. The same parties entered in the 2016 lease agreement, executed in May 2016, before the end of

12

the one-year term of the initial lease. Section 2.3 of the 2016 lease agreement states:

> [IMT Steel] currently leases space (the "Prior Premises") from Duraport Realty Two . . ., an affiliate of [Duraport Realty Four], in Bayonne . . ., pursuant to the Prior Lease dated November 17, 2015[,] which was entered into between [IMT Steel] and Duraport [Realty Two]. The Prior Lease remains in full force and effect. Notwithstanding the foregoing, provided that [IMT Steel] is not in monetary default of the Prior Lease and/or this Lease, then from and after the Commencement Date of the Lease [IMT Steel] may notify [Duraport Realty Four] that [IMT Steel] shall remove itself from the Prior Premises, leave the Prior Premises in the condition required by the Prior Lease and specify a date (after the Commencement Date) that such removal shall be completed and upon which date, subject to compliance with the foregoing, that the prior Lease shall be cancelled and terminated ("the Prior Lease Termination Date").

The judge correctly observed that IMT Steel never provided the necessary notice to establish a termination date. The effect of this failure was that "the licensing agreement and all its terms and obligations remained in full effect despite the signing of the [2016] lease." She further explained that the "[t]he termination date never changed and as long[] as [d]efendants remained in possession of the original site beyond the termination date, the period of holdover tenancy and the required rent associated with it began." We discern no error in the judge's determination, as it is amply supported by the credible evidence in the record.

13

We also reject defendants' claim that the trial court erred in imposing greater liability on the guarantors than that which was imposed on IMT Steel. The number of damages for which the guarantors are responsible is not limited by the amount of the default judgment entered against IMT Steel. Rather, under the 2015 guaranty, Duraport is entitled to collect from defendants the full amount of any damages proven. Specifically, the guarantors' liability "shall be primary" and "Duraport may, at its option, proceed against Guarantor and IMT [Steel], jointly and severally, and may proceed against Guarantor without having obtained any judgment against IMT [Steel]." Additionally, the guarantors specifically waived "any right to require Duraport to proceed against or to exhaust any rights, remedies or recourse against IMT [Steel.]" See Midstates Res. Corp. v. Burgess & Fenmore, 333 N.J. Super. 531, 536 (App. Div. 2000) (determining that where guarantors are jointly and severally liable under a guaranty, a creditor "may proceed against the guarantor . . . without first exhausting any obligation the creditor may have to proceed against the partnership"). Further, the guaranty provides that "the obligations of Guarantor hereunder shall not be terminated, affected, or impaired by reason of . . . any indulgence [or] forbearance . . . granted by Duraport to IMT [Steel.]" There was no error.

A-3346-20

Finally, both parties agree that the judge made a mathematical error when calculating damages. Because there is no dispute that the judge made a mathematical error, we vacate the judgment as to the quantum of damages only, and remand for a recalculation of damages.

Affirmed in part and reversed and remanded in part for a mathematical recalculation of damages consistent with this opinion. All other aspects of the judge's decision are affirmed, including defendants' liability and its duration under the 2015 license agreement and guaranty. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-3346-20