**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1124-20

MERRITT CARR,

    Plaintiff-Appellant,

v.

BOROUGH OF GLEN RIDGE,

    Defendant-Respondent,

and

SHEILA BYRON-LAGATTUTA,
PAUL A. LISOCVICZ, MICHAEL
ROHAL, SEAN QUINN AND
TIMOTHY FARANDA,

    Defendants.

_____

Argued December 1, 2021 – Decided January 5, 2022

Before Judges Whipple, Geiger and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-7281-16.

Jason S. Haller argued the cause for appellant (Curcio Mirzaian Sirot, LLC, attorneys; Jason S. Haller, of

counsel and on the briefs; Jessica A. Tracy, on the briefs).

John N. Malyska argued the cause for respondent (Meyner and Landis, LLP, attorneys; John N. Malyska, on the brief).

PER CURIAM

Plaintiff Merritt Carr appeals from a December 18, 2020 order denying his motion for specific performance to enforce and reform a settlement agreement (Settlement Agreement) with defendant Borough of Glen Ridge (Glen Ridge). We affirm.

I.

Plaintiff was a police officer with the rank of sergeant with the Glen Ridge Police Department (GRPD) since 2002. On August 29, 2016, Dr. Daniel B. Gollin, MD, performed a psychiatric and psychological evaluation of plaintiff. By letter dated September 6, 2016, Dr. Gollin notified GRPD Chief Sheila Byron-Lagattuta that plaintiff was "unfit for duty and unfit for modified light duty due to the severity of his current psychiatric symptoms."

On October 24, 2016, plaintiff filed a complaint against the Borough of Glen Ridge, Sheila Byron-Lagattuta, Paul. A. Lisovich, Michael Rohal, Sean Quinn, Timothy Faranda, and John Does 1-5 (collectively, Glen Ridge). Plaintiff alleged Glen Ridge took adverse employment actions against him in

violation of the New Jersey Law Against Discrimination (LAD), the New Jersey Conscientious Employee Protection Act (CEPA), the New Jersey Civil Rights Act (CRA), and the New Jersey Family Leave Act (FLA).

On March 28, 2017, represented by an attorney with forty years of experience in employment matters, plaintiff filed an application for a disability pension. Pursuant to N.J.A.C. 17:1-6.2(d), his application has been held in abeyance pending final resolution of the litigation.

On July 13, 2020, plaintiff and Glen Ridge executed the Settlement Agreement to settle and release plaintiff's claims arising out of his complaint. The agreement states, in pertinent part:

> 4. Disability Application. The Borough of Glen Ridge agrees to do all things lawful, reasonable and necessary to assist the successful processing of Carr's pension application, including but not limited to prompt execution of any revised documentation required by the pension board of any other entity having authority over the process. The Borough of Glen Ridge also agrees to act in good faith to promptly address any ministerial or substantive impediments that arise in Carr's application process. Carr understands that the [Glen Ridge has] no control over the actual ruling of the pension board and this [r]elease shall remain in full force and effect regardless of the decision of the pension board.
>
> 5. Waiver of Future Employment. [(Employment Waiver)]. Carr agrees that he will not seek any future employment with nor return to his future employment as a police officer with the Borough of Glen Ridge

regardless how his pension application is determined by the State of New Jersey. Notwithstanding this paragraph, [Glen Ridge] expressly acknowledge[s] that Carr's employment status must remain in the status quo, while he applies for his disability pension, including but not limited to any appeals or review of any adverse decisions. . . .

On July 17, 2020, Glen Ridge offered to amend the Employment Waiver in favor of plaintiff. The proposed amendment would have required Glen Ridge, if plaintiff obtained a disability pension, to reinstate plaintiff, and plaintiff to resign within thirty days of his reinstatement. On July 20, 2020, plaintiff rejected the proposed revision. On July 22, 2020, the parties entered a stipulation of dismissal with prejudice and without costs. Plaintiff accepted $675,000 in return for dismissing his claims.

Shortly after the parties executed the Settlement Agreement, plaintiff's employment counsel reviewed the agreement and advised plaintiff that:

[T]he [p]ension [b]oard will require a substantive clarification in the [a]greement in order to process the [pension] application, with regard to the scope of the employment waiver in paragraph [five] of the [a]greement. This was deemed necessary because under State [l]aw, the [p]ension [b]oard is permitted to review a party's application for five years following their retirement, in order to see if they have returned to fitness for duty.

A-1124-20

On December 18, 2020, plaintiff filed a motion for specific performance to enforce and reform the Settlement Agreement, seeking to add the following supplement to paragraph five of the Settlement Agreement (Restoration Provision):

> It is expressly understood that any police employment waiver contained herein will not apply to a restoration order issued by the [New Jersey] Police and Firemen's Board of Trustees pursuant to N.J.S.A. 43:16A-8(2).

On the same day, the trial court entered an order denying plaintiff's motion for the following stated reason:

> Plaintiff's [m]otion is [denied] per the opposition filed by [d]efendant; the settlement agreement was negotiated and entered into with all parties represented by counsel and the aforesaid agreement was entered into as a result of this arm[']s length negotiation between the parties. There is no basis to reform the agreement.

This appeal followed.

II.

Plaintiff first argues that the trial court erred when it declined to order specific performance of paragraph four of the Settlement Agreement. Paragraph four provides, in pertinent part:

> The Borough of Glen Ridge agrees to do all things lawful, reasonable and necessary to assist the successful processing of Carr's pension application,

5

including but not limited to prompt execution of any revised documentation required by the pension board . . . . The Borough of Glen Ridge also agrees to act in good faith to promptly address any ministerial or substantive impediments that arise in Carr's application process. . . .

Plaintiff asserts he bargained for the right to amend the Settlement Agreement to comport with pension law and that the Settlement Agreement requires Glen Ridge to assist in the successful processing of his pension application but concedes that the Settlement Agreement as written does not comply with pension law. Without an amendment to correct this substantive impediment, plaintiff argues that the pension board would construe the Settlement Agreement as an effective resignation from borough employment. An irrevocable resignation disqualifies an application from obtaining a disability pension. Cardinale v. Board of Trustees, 458 N.J. Super. 260 (App. Div. 2019). Thus, plaintiff argues that paragraph four requires the parties to execute the Restoration Provision to supplement the Settlement Agreement. He characterizes the Restoration Provision as "a simple amendment – a statement clarifying that the Settlement Agreement does not encroach upon [the pension board's] reinstatement authority under [p]ension [l]aw."[1]

_____

[1] Under N.J.S.A. 43:16A-8(2), the Board of the New Jersey Police and Firemen's Retirement System may order a beneficiary who retired on a disability

6

A settlement of a legal claim between parties is a contract like any other contract, Nolan v. Lee Ho, 120 N.J. 465, 472 (1990), which "may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div. 1983) (quoting Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App. Div. 1974)). "[We] will not interfere with a trial judge's factual findings and conclusions concerning a settlement agreement that are amply supported by the record." Lahue v. Pio Costa, 263 N.J. Super. 575, 597 (App. Div. 1993).

"The interpretation of a contract is subject to de novo review by an appellate court. See Jennings v. Pinto, 5 N.J. 562, 569-70 (1950). . . . Accordingly, we pay no special deference to the trial court's interpretation and look at the contract with fresh eyes." Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011).

"The plain language of the contract is the cornerstone of the interpretive inquiry; 'when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so

---

retirement back to duty if the medical board finds that the beneficiary can perform their former duty or any available duty with their employer.

would lead to an absurd result.'"  Barila v. B'd of Educ. of Cliffside Park, 241

N.J. 595, 616 (2020) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)).

> If we conclude that a contractual term is ambiguous, we "consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation."  [Matter of C'ty of Atlantic, 230 N.J. 237, 255 (2017)] (quoting C'ty of Morris v. Fauver, 153 N.J. 80, 103 (1998)).  "In a word, the judicial interpretive function is to consider what was written in the context of the circumstances under which it was written, and accord to the language a rational meaning in keeping with the express general purpose."  [Owens v. Press Pub. Co., 20 N.J. 537, 543 (1956).]
>
> [Barila, 241 N.J. at 616.]

"A basic principle of contract interpretation is to read the document as a whole

in a fair and common sense manner."  Hardy ex rel. Dowdell v. Abdul-Matin,

198 N.J. 95, 103 (2009).  A contract "should not be interpreted to render one of

its terms meaningless."  Porreca v. City of Millville, 419 N.J. Super. 212, 233

(App. Div. 2011).

Specific performance of a contract is an equitable remedy.  Allstate New

Jersey Ins. Co. v. Lajara, 222 N.J. 129, 146 (2015).  Decisions regarding the

granting of equitable remedies are typically left to the sound discretion of the

trial courts, and are not disturbed "unless there is a clear showing of abuse of

discretion."  Feigenbaum v. Guaracini, 402 N.J. Super. 7, 17 (App. Div. 2008)

A-1124-20

(quoting Kurzke v. Nissan Motor Corp. in U.S.A., 164 N.J. 159, 165 (2000)). Abuse of discretion occurs when a decision: 1) has no rational explanation, 2) departs from established policies without explanation, or 3) rests on an impermissible basis. Ibid.

Based on our review of the record, we conclude the trial court properly declined to order specific performance to reform the Settlement Agreement for the following reasons. First, because the intent of the parties was plain and the language of the agreement was clear and unambiguous, the court must enforce the agreement as written. Barila, 241 N.J. at 616. The Settlement Agreement plainly requires Glen Ridge to "prompt[ly] execut[e] . . . any revised documentation required by the pension board." Plaintiff, however, does not seek mere revised documentation. Rather, plaintiff seeks to reform the Settlement Agreement itself by inserting the Restoration Provision. Plaintiff attempts to characterize the proposed provision as a simple amendment, but a plain reading of the provision suggests that it would constitute a substantive change to the applicability of the Settlement Agreement. Because plaintiff already accepted the settlement funds and his claims have been dismissed with prejudice, revising a key material provision would unravel the Settlement Agreement and send the parties back to the drawing board. Thus, reading the agreement as to

9

contemplate a revision of the Settlement Agreement would lead to an "absurd result." Ibid.

Second, plaintiff did not demonstrate "fraud or any compelling circumstance" that would justify reforming the Settlement Agreement. Pascarella, 190 N.J. Super. at 124-25. As the trial court found based upon sufficient evidence in the record, both parties were represented by counsel when negotiating and executing the Settlement Agreement. In particular, plaintiff was represented by counsel in this litigation as well as an experienced employment attorney in his pension application. After the parties executed the Settlement Agreement, Glen Ridge offered to revise it and plaintiff declined.

Finally, plaintiff concedes that both parties knew about the issues that may arise in his pension application: "[Glen Ridge], as well as [plaintiff], both knew that the [p]ension [b]oard retained the authority to reinstate Carr under the [p]ension [l]aw." But plaintiff asserts he was unaware that the Settlement Agreement did not comply with pension law until after the agreement was executed. Even if we were to accept this claim as true, it does not constitute "fraud or any compelling circumstance" that would justify reforming the Settlement Agreement. Therefore, we discern no abuse of the court's discretion in declining to order specific performance to reform the Settlement Agreement.

10

We also reject plaintiff's argument that the court erred in declining to order reformation of the Settlement Agreement on the basis of mutual mistake. New Jersey follows the Restatement (Second) of Contracts rule on mutual mistake. St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden, 88 N.J. 571, 580 (1982). The rule states:

> Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected.
>
> [Restatement (Second) of Contracts § 155 (Am. Law Inst. 1981).]

"For a court to grant reformation there must be 'clear and convincing proof' that the contract in its reformed, and not original, form is the one that the contracting parties understood and meant it to be." St. Pius X House of Retreats, 88 N.J. at 580-81 (quoting Central State Bank v. Hudik-Ross Co., 164 N.J. Super. 317, 323 (App. Div. 1978)).

Plaintiff presented no clear and convincing evidence that the Settlement Agreement differs from what the parties intended. Plaintiff conceded that he

learned of his unilateral mistake—post-settlement—of the need to insert the Restoration Provision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1124-20