**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1436-T1

VISHAL PATEL,

    Plaintiff-Appellant,

v.

UNIQUE BUILDERZ, LLC,

    Defendant-Respondent,

and

ASIM MIR,

    Defendant.

_____

Submitted February 13, 2020 – Decided April 29, 2020

Before Judges Nugent and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6167-16.

Frank Craig Fusco, attorney for appellant.

Richard J. Mongelli, attorney for respondent.

PER CURIAM

Following a bench trial, plaintiff Vishal Patel appeals the October 19, 2018 final order that entered judgment against him for $60,656.58 in favor of Unique Builderz, LLC (defendant) for breach of contract under defendant's counterclaim and then dismissed plaintiff's complaint. The claims arise from a contract between the parties for the construction of a house in Edison. We affirm the final judgment.

I.

Plaintiff owned the property where the house was to be constructed. The parties met in April 2014 through plaintiff's realtor. Defendant, a construction company formed in 2012, was licensed as a contractor but needed to obtain a license as a new home builder. They agreed to include H&A Contracting as a contracting party because it had an active general contractor's license and New Home Warranty and Builders Registration Card. In addition, the other member of defendant, also was a member of H&A.

Plaintiff drafted the contract. Defendant wanted changes to the payment terms and timeline according to the work being requested, but plaintiff would not agree to include the changes in the written contract. However, defendant Asim Mir testified that plaintiff "left the contract open for changes . . . which says that in the contract." Defendant Mir testified plaintiff agreed "verbally that

as we progressed, and as we go, he will look into it . . . . And we would revise as we progressed through the job." Defendant Mir testified plaintiff agreed verbally before the contract was signed to change the payment terms as the job progressed.

The May 16, 2014 contract was signed by plaintiff as "homeowner" and by defendant Mir as "president and owner." The contracting parties included plaintiff, defendant and H&A. The "contractor," defined as defendant and H&A, represented it had the "necessary qualifications, experience and abilities" for the job. The contract provided the contractor would provide the labor and materials to build a single-family home for plaintiff in accord with the specifications in the plans. Payment terms in Section C listed specific benchmarks and dollar amounts for a total contract price of $535,000. The contract provided the work was to be "complete[d] . . . on time and on budget" by the contractor. It added that "[t]he authorized person signing the contract on behalf of the contractor gives personal guarantee to complete the work on-time, within budget and abide by this contract." The contractor was to provide warranties. A twenty-four-week schedule was included, but the contract expressly provided that the "[t]imeline can change or vary by [two] months due to weather permitting, delayed materials and change orders." The contract specified who would pay

3

for fees and permits and the insurance to be carried by the contractor. Only plaintiff could terminate the contract. The contract stated this could be "for any reason, upon notifying the [c]ontractor. Should [plaintiff] exercise this right, the contractor shall be paid as per the work completed."

Defendant Mir testified the contract was not a "fixed-bid" contract because there would be a need for payment revisions as the contract progressed. The contract provided for the selection of various features; the timeline included benchmarks and could vary "due to weather permitting, delayed materials and change orders." It contemplated that additional shop drawings and professionals were needed. Another portion allowed plaintiff to determine during the construction that the kitchen and bathroom interior arrangement could be different from the plan. The plan was changed to add a bathroom in the basement.

When defendant obtained its new home builder's license, the parties signed a contract addendum on June 12, 2014, that removed H&A from the contract. The addendum stated that defendant Mir was to "personally guaranty all terms of the [c]ontract." It added the construction of custom closets. The addition of custom closets did not include a cost nor adjustment to the construction timeline. Also, defendant agreed under the addendum to finish

construction in eight months or less from the date the permits were issued and if not, defendant would be responsible for a $200 penalty per day.

Defendant Mir testified that once construction began, he provided plaintiff with copies of all invoices of expenses and spoke or emailed plaintiff every day. Plaintiff visited the job site daily but did not raise any issues about project delay or costs.

By August 18, 2014, plaintiff had made two payments under the contract: a check for $26,750 on June 23, 2014, and another check on July 8, 2014, for $53,500. Plaintiff also made a partial payment of $21,418 for windows on July 11, 2014.

By mid-August 2014, defendant contended it had incurred $245,859.19 in labor and material costs under the contract but had been paid only $155,168. Some of this was for changes by plaintiff and some for items called for by the contract. By then the framing was nearly complete. Defendant asked plaintiff to revise the payment schedule because it had incurred a number of costs and paid for extras. Defendant Mir testified he gave plaintiff a copy of all the invoices.

Plaintiff contended defendant was asking for advance payments under the contract and he had paid what the contract required. He testified there had been

delays in construction. Plaintiff made two other payments: on August 19, 2014, a check in the amount of $36,000 for framing and on August 24, 2014, a check for $17,500 also for framing.

On August 30, 2014, at plaintiff's request, defendant emailed a revised payment schedule to plaintiff. Plaintiff claimed defendant would not proceed further on the house without additional money from plaintiff.

On September 5, 2014, plaintiff sent defendant an email that terminated the contract, claiming defendant stopped work on August 29, 2014, because defendant wanted to "revis[e] the payment terms and the contract price." Plaintiff directed defendant to stop work and not to go to the work site.

Defendant sent plaintiff an invoice for $90,691.19 on September 9, 2014 for work completed under the contract that was not paid. Plaintiff contracted with another contractor, R.A. Puran Construction, to complete the job for $325,000. By September 2014, defendant returned to the jobsite to retrieve his equipment but could not do so.

Plaintiff filed a pro se complaint against defendant and defendant Mir on October 21, 2016, for breach of contract claiming defendant did not satisfy the workmanship, specifications or schedule agreed upon in the contract and stopped work after demanding advance payments. Plaintiff requested an order

6

removing the lien placed on the property by defendant, damages under the Consumer Fraud Act (CFA) and damages for costs in excess of the contract to complete construction.

Defendants denied the allegations. They filed a counterclaim for breach of contract and fraud, requesting compensatory and punitive damages. Following a period for discovery, defendants were granted partial summary judgment dismissing defendant Mir individually as a personal guarantor under the contract. The trial court found the contract's addendum did not separately provide for personal liability or include "any other indicators that the document's purpose was to hold defendant Mir personally liable . . . ." Defendant's motion to dismiss the CFA claim was denied without prejudice because there were genuine issues of material fact about whether the CFA was violated based on the quality of the work and payment schedule.

Plaintiff tape recorded a number of his conversations with defendant Mir without Mir's knowledge. Plaintiff provided these to defendant at the end of January 2018 via Dropbox, but then the link deactivated. Plaintiff did not reactivate it at defense counsel's request.

On the first day of trial, defendant made an in limine motion to bar plaintiff from using the recordings at trial. Trial was adjourned overnight to

permit defendant's attorney to listen to the recordings. The court also reviewed the recordings in camera.

The next day, the trial court ruled that all but three tapes were inadmissible and the three that could be used would be limited to impeaching defendant Mir if he testified. It found some of the tapes appeared to be modified, there was an inordinate amount of noise in the background, it was difficult to understand what was being said and by whom, the recordings were not sufficiently audible and were incomplete. Some of the people recorded spoke in a foreign language.

Defendant's motion for involuntary dismissal at the close of plaintiff's case was granted in part, dismissing the CFA claim[1] but not the breach of contract claim.

The trial court entered a final judgment on October 19, 2018. It dismissed plaintiff's complaint, finding defendant did not commit a material breach of the contract with plaintiff and any damages plaintiff may have "were for the most

---

[1] Plaintiff's brief does not address dismissal of the CFA claim. Because this issue was not raised in his merits brief, it is deemed waived. Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014); Drinker Biddle v. N.J. Dep't of Law & Pub. Safety, Div. of Law, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (noting that claims not addressed in merits brief are deemed abandoned). See Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2020).

part self-inflicted."  The trial court entered judgment against plaintiff on the breach of contract counterclaim.

In its written opinion, the trial court found plaintiff committed an anticipatory breach of the contract and then failed to compensate defendant for the value of its work as of September 5, 2014, when plaintiff terminated the contract.  The trial court stated "there was considerable testimony adduced from both [parties]," as well as

> [a]udio recording evidence plaintiff presented at trial ma[king] it clear that this was not to be a 'fixed-price' contract and, instead, that the parties had an oral agreement to adjust the payment terms as needed to more accurately reflect anticipated changes/increases in cost to defendant and its subcontractors for labor and materials as the project moved forward.

The trial court found the conduct of the parties and the contract itself "clearly contemplated there would be changes in the [c]ontract's payment terms and timeline for performance once construction commenced."  The trial court highlighted that the contract did not use the term "fixed-price."  Paragraph S of the contract, entitled "OTHER TERMS" allowed for fluctuations in pricing.  The contract used terms such as "change order" and "change orders," indicating the contract terms were fluid.  The trial court found "[t]he [c]ontract price of $535,000 was not a 'fixed-price' as plaintiff urged the Court to believe; rather, it

9

functioned more as a base price, subject to adjustment (downward or upward) by 'change orders' as contemplated by the Contract's express terms." It also found the contract was not integrated, meaning "one which explicitly provided that any and all changes to the terms of the agreement be memorialized in a writing signed by both parties."

The trial court found plaintiff "violated a lawfully enforceable oral modification . . . to the Contract concerning obligations to make equitable adjustments to the payment terms and performance schedule . . ." Further, the trial court determined plaintiff was

> equitably estopped from denying that he induced continued performance . . . [by defendant] with partial payments made in derogation of the payment terms set forth in the Contract, gaining the benefit of work performed without paying for it, and while surreptitiously negotiating a take-over of the project by another Contractor[.]

The trial court found plaintiff's testimony was not credible. Because it determined plaintiff committed an "anticipatory and material breach of the termination provision," the trial court determined defendant was entitled to compensatory damages.

The trial court detailed its methodology for calculating defendant's damages. Defendant submitted an invoice for $90,691.19 which was the

difference between the work it completed ($245,859.19) and $155,168 that plaintiff paid defendant. The trial court disallowed office expenses of $30,034.61, for which defendant had no proof, for total damages of $60,656.58, entering judgment against plaintiff for this amount. However, the trial court found defendant did not prove count two of its counterclaim—legal fraud—and dismissed it.[2]

On appeal, plaintiff argues the trial court erred by finding in favor of defendant on the breach of contract counterclaim because he contends defendant did not prove damages. Plaintiff contends the trial court should not have dismissed his breach of contract claim because the court erroneously applied the parol evidence rule, plaintiff did not commit an anticipatory breach nor do the principles of promissory estoppel or equitable estoppel apply. Plaintiff argues the trial court erred by dismissing his claims against defendant Mir who he argues individually guaranteed the contract. Plaintiff contends the trial court erred by limiting his use at trial of the tape recording.

## II.

We afford a deferential standard of review to the factual findings of the trial court on appeal from a bench trial. Rova Farms Resort, Inc. v. Inv'rs Ins.

---

[2] Defendant did not file a cross-appeal.

<u>Co.</u>, 65 N.J. 474, 483-84 (1974). These findings will not be disturbed unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." <u>Id.</u> at 484 (internal quotation mark omitted) (quoting <u>Fagliarone v. Twp. of N. Bergen</u>, 78 N.J. Super. 154, 155 (App. Div. 1963)). However, our review of a trial court's legal determinations is plenary. <u>D'Agostino v. Maldonado</u>, 216 N.J. 168, 182 (2013) (citing <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995)).

A.

Plaintiff argues the trial court erred by finding he breached the contract with defendant. We disagree. The trial court's determination is amply supported by credible evidence in the record.

The party seeking to prove a breach of contract claim must prove "first, that '[t]he parties entered into a contract containing certain terms'; second, that '[the non-breaching party] did what the contract required [it] to do'; third, that '[the breaching party] did not do what the contract required [it] to do[,]' defined as a 'breach of the contract'; and fourth, that '[the breaching party's] breach, or failure to do what the contract required, caused a loss to the [non-breaching party].'" <u>Globe Motor Co. v. Igdalev</u>, 225 N.J. 469, 482 (2016) (first alteration

in original) (sixth alteration in original) (quoting Model Jury Charges (Civil), §

4.10A, "The Contract Claim-Generally" (approved May 1998)).

The parties do not dispute they entered into a written contract. Under that contract, plaintiff had the ability to terminate it and he did exactly that in his email to defendant on September 5, 2014. The contract further provided, however, that "[s]hould [plaintiff] exercise this right, the contractor shall be paid as per the work completed." We agree that plaintiff violated this portion of the contract when he did not pay defendant for the work completed.

Defendant Mir testified he regularly submitted invoices to plaintiff as the work progressed. On September 9, 2014, defendant submitted a list of outstanding expenses for the work it performed under the contract which also included changes to the construction made by plaintiff. Plaintiff did not object to the introduction of this evidence at trial. Although plaintiff had ample opportunity to cross-examine defendant, he did not establish that the expenses were not incurred nor did he introduce his own proofs to refute defendant's claims. The trial court excluded the claimed office expenses because these were not proved. Our careful review of the record shows there was no error by the court in admitting this invoice and that defendant's testimony established the damage claim. Because defendant was not paid for work it completed under the

contract—as the contract provided if there were a termination—plaintiff breached the contract.

B.

Plaintiff contends the trial court erred by dismissing his claim against defendant for breach of contract. He contends the contract was a fixed-price contract.[3] Plaintiff argues the trial court erred by applying the parol evidence rule because the terms of the contract were clear and should have been applied as written. He also claims he paid defendant what was due under the contract. Plaintiff asserts the trial court erroneously applied the doctrines of promissory and equitable estoppel.

"The interpretation or construction of a [written] contract is usually a legal question for the court[.]" Driscoll Constr. Co. v. State of N.J., Dep't of Transp., 371 N.J. Super. 304, 313-14 (App. Div. 2014) (citing Spaulding Composites Co., Inc. v. Liberty Mut. Ins. Co., 346 N.J. Super. 167, 173 (App. Div. 2001), rev'd on other grounds sub nom., Spaulding Composites Co., Inc. v. Aetna Cas. Ins. Co, 176 N.J. 25 (2003), cert. denied, 540 U.S. 1142 (2004)). "If the terms of a

---

[3] "[A] fixed-price contract is an explicit assignment of the risk of market price increases to the seller and the risk of market price decreases to the buyer." N. Ind. Pub. Serv. Co. v. Carbon Cnty. Coal Co., 799 F.2d 265, 278 (7th Cir. 1986); see also, Restatement (Second) of Contracts § 261 (Am. Law Inst. 1981).

14

contract are clear, we must enforce the contract as written and not make a better contract for either party." Graziano v. Grant, 326 N.J. Super. 328, 342 (App. Div. 1999) (citing Schenck v. HJI Assoc., 295 N.J. Super. 445, 450 (App. Div.), certif. denied, 149 N.J. 35 (1996)).

In determining the intent of the parties at the time they contracted, courts can consider parol evidence. "We consider all of the relevant evidence that will assist in determining the intent and meaning of the contract." Conway v. 287 Corporate Ctr. Assoc's, 187 N.J. 259, 269 (2006). We permit extrinsic evidence to be used to aid the interpretation of an integrated agreement even when the contract is free from ambiguity on its face. Atl. N. Airlines v. Schwimmer, 12 N.J. 293, 301-02 (1953). "The judicial interpretive function is to consider what was written in the context of the circumstances under which it was written, and accord to the language a rational meaning in keeping with the manifest general purpose." Harker v. McKissock, 12 N.J. 310, 323 (1953) (citing Casriel v. King, 2 N.J. 45 (1949)).

Taking these principles into consideration, we conclude the trial court's decision was supported by substantial credible evidence in the record. The contract—drafted by plaintiff—allowed for changes at the direction of the homeowner but did not make provision for how the changes would be paid for

15

under the contract nor for a resulting adjustment in the schedule or payment terms. There was simply nothing in the agreement's language that required defendant to be responsible for the cost of changes or the resultant delays.

We agree the contract was not fully integrated[4] in this regard. See Restatement (Second) of Contracts § 213 (Am. Law Inst. 1981). This lapse required consideration of the parties' intent. As the Supreme Court observed:

> [a]rrangements embodied in a contract may be such that the parties have impliedly agreed to certain terms and conditions which have not been expressly stated in the written document. Some principles have been utilized to define those implications. Thus we have held that [terms] will be implied in a contract where the parties must have intended them because they are necessary to give business efficacy to the contract as written. Moreover, in every contract there is an implied covenant of good faith and fair dealing. As a corollary to that proposition it is certainly reasonable to imply that neither party to a contract shall injure the right of the other to receive the fruits of the agreement.
>
> [Onderdonk v. Presbyterian Homes of N.J., 85 N.J. 171, 183 (1981) (citations omitted) (internal quotation marks omitted).]

---

[4] "[A] writing which in view of its completeness and specificity reasonably appears to be a complete agreement, . . . is taken to be an integrated agreement unless it is established by other evidence that the writing did not constitute a final expression." Chance v. McCann, 405 N.J. Super. 547, 564 n.6 (App. Div. 2009) (quoting Restatement (Second) of Contracts § 213 (Am. Law Inst. 1981)).

Plaintiff argues the contract was a fixed-price contract. The contract did not use the term fixed-price. Plaintiff drafted the contract. Had he intended the contract to be fixed-price, he could have provided for that in the contract.

Defendant testified the parties had a verbal understanding that as the contract progressed, they would make adjustments to the payment terms and schedule. The trial court found defendant's testimony to be credible. We defer to the court's credibility findings. "Because a trial court 'hears the case, sees and observes the witnesses, [and] hears them testify,' it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting Pascale v. Pascale, 113 N.J. 20, 33 (1988) (alteration in original)).

We agree with the trial court that it was appropriate to look to parol evidence to determine the intent of the parties to pay for changes that modified the schedule and payment terms. The trial court's finding there was a verbal understanding was corroborated by defendant's testimony, by the tape recordings made by plaintiff and by the actions of the parties. There was ample evidence this was not a fixed price contract—as the trial court determined— because it did not expressly say how the parties would address the changes the parties could make that were provided for in the contract. In determining the

parties' intent, the contract should be considered as a whole, in "accord with justice and common sense." Cumberland Cty. Imp. Auth. v. GSP Recycling Co., 358 N.J. Super. 484, 497 (App. Div.) (quoting Krosnowski v. Krosnowski, 22 N.J. 376, 387 (1956)). The trial court's determination that defendant did not breach the contract was entirely consistent with these principles. The trial court did not err in examining parol evidence in reaching these conclusions.

C.

Plaintiff argues the trial court erred by dismissing his claims against defendant Mir as an individual guarantor. The issue is moot in light of the determination defendant did not breach the contract. Even if it were not, a guaranty is the promise to be liable for the obligation of another person. Garfield Trust Co. v. Teichmann, 24 N.J. Super. 519, 527 (App. Div. 1953). "[U]nder a guaranty contract, the guarantor, in a separate contract with the obligee, promises to answer for the primary obligor's debt on the default of the primary obligor." Feigenbaum v. Guaracini, 402 N.J. Super. 7, 18 (App. Div. 2008) (quoting Cruz-Mendez v. ISU/Ins. Servs., 156 N.J. 556 (1999)). Here, plaintiff did not provide proof of a separate contract where defendant Mir agreed to answer for defendant's obligations by pledging his own assets.

A-1436-18T1

D.

We briefly address plaintiff's remaining claims about the trial court's evidentiary rulings. Our review of those ruling is made under an abuse of discretion standard. Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010) (citing Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)). "A reviewing court must not 'substitute its own judgment for that of the trial court' unless there was a 'clear error in judgment'—a ruling so 'wide of the mark that a manifest denial of justice resulted.'" State v. Scott, 229 N.J. 469, 479 (2017) (quoting State v. Perry, 225 N.J. 222, 233 (2016)).

Plaintiff contends the trial court should have admitted in evidence a decision by an arbitrator addressing defendant's claim under the New Jersey Construction Lien Law. See N.J.S.A. 2A:44A-1 to -38. We discern no abuse of discretion. This was a hearsay document that could not be authenticated as a business record.

Plaintiff argues the trial court should not have barred his use at trial of tape recordings he made of conversations with defendant. In State v. Driver, 38 N.J. 255, 288 (1962), the Court considered the admissibility of audio tapes that for the most part were "unintelligible and inaudible." In reversing the trial court, the Supreme Court noted that while voice recordings "may be an invaluable aid

to a court . . . . the trial judge should listen to the recording . . . . [to] decide whether it is sufficiently audible, intelligible, not obviously fragmented, and, also of considerable importance, whether it contains any improper prejudicial matter." Id. at 287-88.

Here, consistent with Driver, the trial court listened to the recordings before concluding that many of them seemed to be modified, contained indiscernible audio, foreign languages and unidentified speakers. The trial court allowed three of the ten recordings to be admitted with the limited purpose of impeaching defendant if necessary. The trial court did not abuse its discretion in excluding the others.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

20                                                                 A-1436-18T1